# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D.F., individually on behalf of himself and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>DEMAND FOR JURY TRIAL</u> |
| ASHLYNN MARKETING GROUP, INC., doing business as KRAVE KRATOM, and DOES 1-50, inclusive, | |
| Defendants. | |

Plaintiff D.F. ("Plaintiff")[1] brings this action on behalf of himself and all others similarly situated against Defendant Ashlynn Marketing Group, Inc., d/b/a Krave, Krave Kratom, and/or Krave Botanicals ("Defendant" or "Krave") and Does 1 through 50, inclusive.

## <u>NATURE OF THE ACTION</u>

1.      This is a civil class action against Defendant for its false, misleading, deceptive, and negligent sales practices regarding its kratom powder, capsule, and liquid extract products (collectively, the "Products"). Kratom is both a plant and a drug. The plaint originates from Southeast Asia where its leaves have long been ingested to produce stimulant and opiate-like effects. Use of kratom in the United States was practically non-existent until the last decade. Since then, kratom has become a massively popular substance in the United States. This is because it is

---

[1] Because this action concerns issues of addiction and medical status, Plaintiff is filing under his initials for the sake of their personal privacy. Plaintiff is a reasonable consumer who fell victim to Defendant's omissions and misrepresentations about the addictive nature of kratom, which operates like an opioid, and became addicted as a result.  Since addiction issues are still wrongly stigmatized, Plaintiff is filing this matter anonymously but will reveal his name as necessary to the Court under seal.

currently legal to consume, and because of the stimulant and opiate-like effects produced by its two major alkaloids 7-Hydroxymitragynine ("7-OH") and Mitragynine ("MG").

2.      However, what consumers do not know is that the opiate-like effects produced by MG and 7-OH are not the result of novel chemical interactions in the brain. Rather, these alkaloids are behaving, in part, exactly like opioids. That is, the MG and 7-OH found in the kratom plant activates the same opioid receptors in the human brain as morphine, heroin, and other opiates. Consequently, kratom consumption has the same risks of addiction, dependency, and painful withdrawal symptoms, among various other negative side effects.

3.      When reasonable consumers think of opioids, they think of heroin, fentanyl, hydrocodone, oxycodone, or morphine; they do not think of kratom or expect the "kratom alkaloid" product sold at their local gas stations or corner stores to act like an opioid or have the same addiction and dependency risks as opioids. Kratom is extremely addictive, and as a result, tens of thousands of unsuspecting consumers have developed kratom dependencies that cause them serious physical, psychological, and financial harm.

4.      Defendant has intentionally failed to disclose these material facts regarding the dangers of kratom consumption anywhere on its Products' labeling, packaging, or marketing material. As a result, Defendant has violated warranty law and state consumer protection laws.

5.      Defendant relies on its Products' vague packaging and consumers' limited knowledge of kratom to get unsuspecting people addicted to its Products and reap substantial profits from these addictions. Defendant relies on this ignorance and does nothing to correct it. Such activity is outrageous and is contrary to New York law and public policy.

6.      Plaintiff seeks relief in his action individually, and as a class action, on behalf of similarly situated purchasers of Defendant's Products, for the following violations of: (i) New York

Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.* (the "NYDAPA"); (ii) New York False Advertising Act, N.Y. Gen. Bus. Law § 350, *et seq.* (the "NYFAA"); (iii) breach of implied warranty; (iv) unjust enrichment; and (v) fraud by omission.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this case is a class action where the aggregate claims of all members of the proposed Classes (defined below), exclusive of interest and costs, exceed the sum or value of $5,000,000 and Plaintiff, and at least some members of the proposed Classes, have a different state citizenship from Defendant.

8.      This Court has personal jurisdiction over Defendant because Defendant is an entity with constitutionally sufficient contacts with this District to make personal jurisdiction in this Court proper. Defendant conducts sufficient business with sufficient minimum contacts in this District, and otherwise intentionally avails itself to this District's market through its operation and sale of its kratom Products within the State of New York and the Southern District of New York.

9.      Venue is proper in this District because Defendant transacts substantial business in this District, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims arose in this District, and because Plaintiff resides in this District.

## GENERAL ALLEGATIONS

### A.    Background and Pharmacology of Kratom

10.     "Kratom" refers to the substance derived from the leaves of a tropical plant, *mitragyna speciosa*, (the "kratom plant") indigenous to Southeast Asia, where it has been used in herbal medicine since the 19th Century. Kratom's first reported use in scientific literature was in 1836, when it was noted that Malays used kratom tree leaves as a substitute for opium. Historic

use of the kratom plant was particularly well-documented in Thailand, Indonesia, and Malaysia, where kratom remains popular to this day.

11.    Kratom is the most widely used drug in Thailand. This popularity in Thailand does not mean Thailand believes kratom is harmless. To the contrary, Thailand understands that kratom is dangerous, as demonstrated by its ban of the substance in 1943.[2] Kratom was also historically popular in Malaysia until it was banned in 1952 under the Poisons Act.

12.    Kratom's unknown and inconsistent effects have historically been part of its appeal. For instance, the earliest accounts of kratom characterize kratom use for both a stimulant effect during hard day-labor by chewing fresh kratom leaves, and also for an analgesic or relaxing effect by brewing kratom into a tea.

13.    In the Western world, kratom is sold online and at herbal stores, gas stations, corner stores, smoke shops, and "head" shops where it is primarily marketed as an herbal medicine or natural supplement to use to "treat" a variety of ailments (e.g., pain, mental health, opioid withdrawal symptoms), and/or to obtain a "legal" or "natural" high.

14.    To create consumable kratom products, kratom plant leaves are harvested, dried, and crushed into a fine powder that is then packaged and sold in pouches, capsules, or liquid formulations.[3]

15.    The chemicals in the kratom plant which produce a psychoactive effect when ingested are called "alkaloids." "Alkaloids" are a class of various naturally occurring organic

---

[2] In 1943, Thailand banned the possession, use, and propagation of kratom, and later banned all kratom sales, imports, exports, and consumption all together. However, in 2021, Thailand decriminalized possession of kratom in response to a growing pressure on its justice system to fix the country's overcrowded prisons through liberalization of its drug laws.

[3] When kratom leaves are extracted into a liquid formulation, this is colloquially called a "kratom shot."

chemical compounds. The primary alkaloids in kratom leaves responsible for the kratom's effects are MG and 7-OH.

16.    MG and 7-OH produce a wide spectrum of effects because they interact with many different receptors in the brain. Studies show that MG and 7-OH interact with alpha-2 adrenergic receptors (adrenaline), D2 dopamine receptors, and the serotonin receptors (5-HT2A and 5-HT2C), all of which contribute to kratom's mood-lifting and stimulant-like effects.

17.    Most crucially, MG and 7-OH also interact with the mu-opioid receptor.[4] Yet consumers are largely ignorant of this fact.

18.    For instance, while both 7-OH and MG target the opioid-receptor, 7-OH is more potent than both MG and morphine. In fact, 7-OHMG's effect on the opioid receptors is approximately forty-six times that of MG, and thirteen times that of morphine.  Both MG and 7-OH were found to be more potent to the mu-opioid receptor than morphine when taken via oral administration.

19.    Accordingly, kratom products are referred to as a "quasi-opiate" by health professionals because of its opioid-like characteristics.

20.    Opioids are addictive not only because of the pleasurable effects that they produce, but also because sudden cessation of opioid use causes severe withdrawal symptoms which users feel compelled to avoid by taking more of the drug. The tragedy of addiction is that users want to stop but cannot.

21.    All substances that act on the opioid receptors have a high risk of addiction, and kratom is no exception. Addiction occurs when an opioid is ingested on a regular basis and, over time, the user develops a tolerance to the drug that requires the user to consume an increased dose

---

[4] The mu-opioid receptor produces the most addictive or habit-forming effects, such as euphoria and analgesia. For this reason, the mu-opioid receptor is known as "the gateway to addiction" because it is the receptor which all opioids interact with to produce the classic opioid high feelings of euphoria, sedation, and pain relief.

of the drug to achieve the same effects a lower dose previously had. As these doses increase, the body becomes dependent on the drug to feel normal and function properly. When the drug is suddenly taken away or the user tries to stop taking the drug, withdrawal occurs. Withdrawal symptoms cause the user to feel much worse than they did before they started taking the drug, and can be extremely painful and intolerable to the user.

22.    Indeed, kratom withdrawal symptoms are very similar to those of traditional opioid withdrawal. These symptoms include irritability, anxiety, difficulty concentrating, depression, sleep disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, extreme dysphoria, and malaise.

23.    Users typically start substances like kratom because of how good it makes them feel, but once addicted, they use kratom to avoid the pain and sickness of withdrawal. Use is no longer is about getting high, but about not feeling "sick."

**B.    Kratom Use and Addiction in the United States**

24.    Over the past decade, kratom has exploded in popularity within the United States. As of 2021, the American Kratom Association estimates that kratom is a $1.3 billion a year industry, with 11 million to 15 million annual users within the United States. Studies show that 1 million United States residents use kratom monthly, and that two-thirds of those users use kratom daily.

25.    Kratom's popularity is attributed to several factors: first, kratom is marketed as a safe substitute for painkillers and so it appeals to consumers who falsely equate "natural" with "safe;" second, kratom has received media attention as a "nootropic" or "smart" drug because it is stimulating at low doses; third, kratom is widely available and unregulated within the United States; fourth, it produces a "pleasurable" high; and lastly, users are unaware of kratom's opioid-like characteristics, addiction, and withdrawal potential.

26.     Kratom is still a relatively unknown substance to the average consumer, and most people have never heard of it.

27.     Kratom sellers advertise it as a substitute for coffee, a pain reliever, a treatment for opioid withdrawal, an antidepressant, an anti-anxiety supplement, and that it improves focus and gives users a boost of energy to get through the day. Some even assure consumers that kratom is a <u>non-addictive</u> way to deal with opioid withdrawal. These kratom companies universally reiterate these purported "benefits" of kratom consumption, without disclosing any of the corresponding harms of kratom use.

**C.     Defendant Knew or Should Have Known it was Selling a Highly Addictive Drug to Unsuspecting Consumers**

28.     Despite kratom's traditional uses, the negative effects of kratom use are well-documented in Southeast Asia where the plant originates. Kratom addiction in Thailand and Malaysia has been studied and documented in the United States by scientists and researchers since at least 1988.

29.     Upon information and belief, Defendant has interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to it.

30.     Even without such interactions, Defendant received numerous user reports about the addictive potential of kratom in the United States.

31.     Defendant therefore knew or should have known that the Products it was selling were highly addictive.

32.     Despite this knowledge, Defendant failed to disclose kratom's addictive potential to its customers on its website or on its Products' packaging.

33.     The furthest Defendant goes in "warning" a consumer about the usage of kratom is buried in a standard disclaimer at the bottom of the "Home" webpage of Defendant's website.

Here, Defendant states, "Do not use if you are pregnant or nursing. It is illegal to possess Kratom if under 21 years of age...Consult your healthcare professional before using. Do not combine with alcohol or medication."[5] This disclaimer is a deliberately standard, uniform, and vague disclaimer one could easily find on an alcohol bottle. Defendant's disclaimer is misleading and far from the appropriate warning that consumers are entitled to. Kratom requires a far more detailed and comprehensive description warning consumers of its highly addictive nature, potential for seriously detrimental health effects, and susceptibility for withdrawal. Additionally, Defendant's disclaimer lacked any information on the recommended usage of the Products, which could lead unsuspecting consumers to using the Products on a daily basis, and further leading to addiction.

34.    Defendant has no excuse for its lack of a detailed disclaimer warning on its Krave Products' packaging of kratom's harms. The pharmacological effects of MG and 7-OH have been thoroughly studied, and it is well-established that kratom acts on the same mu-opioid receptors in the brain as traditional opioids do. Further, there are widespread reports and studies of other addiction and dependency issues.

35.    Defendant therefore knows or should have known that kratom users can develop an addiction. Yet, Defendant fails to disclose this material fact on its advertisements or on its Products' packaging.

36.    Despite this, Defendant markets its kratom Products as if they are nothing more than over-the-counter supplements. Indeed, the packaging looks more like allergy medication than a dangerously strong opioid, and Defendant's website and design language obfuscates the very real truth that it is selling a strong narcotic to consumers who likely do not fully comprehend the risks associated with consuming the Products.

---

[5] https://www.kravekratom.com.

37.     Reasonable consumers looking at the Products' packaging would not presume that kratom is highly addictive.

38.     Nowhere on the packaging does Defendant mention that kratom presents the same addiction problems that former opioid users and any other consumer would want to avoid. Consumers seeking help as they come off opioids may be drawn in by Defendant's misleading statements about kratom without knowing that they risk trading one addiction for another.

39.     As a kratom product seller, manufacturer and/or distributor, Defendant occupies a position of superior knowledge to the average reasonable consumer, who likely knows nothing about kratom.

40.     The information provided on Defendant's Products' packaging in particular is woefully sparse. A representative image of one of Defendant's Products is depicted below:



41.    On Defendant's website where it sells this kratom Product, Defendant does not provide any image of the back of the Product's bottle or show any ingredient list for the Product on the bottle or on the Product's webpage.[6]

42.    Nor does Defendant provide any warning to consumers on the Products' packaging or its website that the Products interact with opioid receptors or are highly addictive and should not be taken on a daily basis, or note any of the numerous negative side effects and withdrawal symptoms caused by its Products.

43.    Indeed, the entire contents of the warning on the Products' packaging is a bog-standard disclaimer—written in miniscule text—that consumers should consult a healthcare provider before use and that Defendants are not liable for "misuse of these products."

44.    A boilerplate disclaimer is plainly insufficient. This is a Product that poses a serious risk of intense addiction and withdrawal in line with traditional "hard" opioids.

45.    Addiction is a disease. As such, Defendant's Krave Products pose an unreasonable health hazard, and Defendant had and has a duty to disclose this fact on its *Products' packaging.*

46.    What's more, nothing about the Products' packaging would lead reasonable consumers to believe they were purchasing compounds similar to opioids, that function on the same mu-opioid receptors in the brain. To the contrary, the packaging proudly states "All Natural." Further, the company logo includes a pleasant-looking green leaf. It looks as innocuous as a vitamin supplement.

47.    Defendant, through its misleading advertising and its failure to disclose kratom's addictive properties on its Products' labels, relied upon the average consumer's incomplete knowledge of kratom to better sell its Products and get users addicted to them.

---

[6] https://www.kravekratom.com/red-maeng-da-kratom-capsules.

48.     Defendant fails to disclose kratom's addictive potential because Defendant knows that it is a material fact to reasonable consumers which would influence their purchasing and consumption decisions, likely to Defendant's detriment.

49.     By any metric, Defendant's conduct is immoral, unethical, and contrary to New York public policy.

50.     The United States is going through an opiate crisis that is shaking the foundations of our society. Amid this crisis, Defendant is creating more addicts for no reason other than to line its pockets, without adequate disclosure of its Products' risks through the use of false and misleading packaging and marketing. That cannot—and should not—stand, at least when Defendant's conduct entails breaches of warranty and violation of state consumer protection statutes as it does here.

## **PARTIES**

51.     Plaintiff D.F. is a resident of Peekskill, New York. D.F. first heard about Krave kratom at a corner store and thought it might help him with physical pain and anxiety because the Products were advertised as plant-based products made for natural energy and pain relief. D.F. was never warned about the risks of taking kratom from the store or from reading the Krave Product's packaging when he purchased it. D.F. purchased Krave Products from the 202 Mobil gas station in Peekskill, New York. D.F.'s use of Defendant's Products increased consistently over time until he was consuming roughly 14-21 grams of Krave powder per day, costing an average of about $40 each week, toward the end of the pandemic. Recently, in or around June 2024, D.F. succeeded in stopping his use of Defendant's kratom Products. The experience was eye-opening and agonizing. D.F. did not realize howe truly addicted to the substance he had become until he experienced the withdrawals from quitting, which included flu-like symptoms, insomnia, sweating, nausea,

diarrhea, and others. D.F. also recently suffered seizures—a first for him—that he believes are related to his kratom use. Had D.F. known that Defendant's Krave Products were highly addictive and that he would suffer severe withdrawal symptoms, by way of a warning on the Products' packaging, he would never have purchased them.

52.     Defendant Ashlynn Marketing Group, Inc., doing business as Krave, is a California corporation with its principal place of business in Santee, California.  Defendant Krave owns and operates the Krave website, www.kravekratom.com, and also advertises, markets, distributes, and sells its Krave Products in New York and throughout the United States.

53.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-50, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe defendants is, in some manner, legally responsible for the damages suffered by Plaintiff and members of the proposed Classes as alleged herein. Plaintiff reserves the right to amend this Complaint to set forth the true names and capacities of these defendants when they are ascertained, along with appropriate charging allegations, as may be necessary.

## CLASS ALLEGATIONS

54.     Plaintiff bring this action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all other Class members, defined as follows:

> All persons nationwide who, within the applicable statute of limitations period, purchased Krave kratom products (the "Nationwide Class").

> All persons who, within the applicable statute of limitations period, purchased Krave kratom products while in New York (the "New York Class").

55.     Excluded from the Classes is Defendant, as well as its officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and any judge who presides over this action.  Plaintiff reserves the right to

expand, limit, modify, or amend these Class definitions, including the addition of one or more subclasses, in connection with their motion for Class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

56.    ***Numerosity***: The members of the Classes are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Classes contain at least thousands of consumers throughout New York and the United States who have been damaged by Defendant's conduct as alleged herein. The precise number of members of the Classes is unknown to Plaintiff at this time.

57.    ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

a.    whether the labels on Defendant's Products have the capacity to mislead reasonable consumers;

b.    whether Defendant knew that kratom is a highly addictive substance that causes physical and psychological dependence and opioid-like withdrawal symptoms;

c.    whether Defendant's conduct alleged herein violates the NYDAPA and/or the NYFAA.

d.    whether Defendant's conduct alleged herein constitutes unjust enrichment;

e.    whether Defendant's conduct constitutes a fraudulent omission;

f.    whether Plaintiff and the Classes are entitled to damages and/or restitution; and

g.     whether an injunction is necessary to prevent Defendant from continuing to sell its Krave Products without warning labels of their addictiveness.

58.    **Typicality:** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Class members sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that its Products are highly addictive and akin to opioids.

59.    **Adequacy:** Plaintiff will fairly and adequately protect the interests of the members of the Classes.   Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Classes.

60.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

61.    Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

62.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff, members of the Classes, and the general public—who are also negatively impacted by the dregs of addiction—and will likely retain the benefits of Defendant's wrongdoing.

63.     Based on the forgoing allegations, Plaintiff's claims for relief include those set forth below.

64.     Plaintiff is informed that Defendant keeps extensive computerized records through its online sales data, as well as through, *inter alia*, general marketing programs. Defendant has one or more databases through which a significant majority of members of the Classes may be identified and ascertained, and Defendant maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

### FIRST CAUSE OF ACTION
**Violation of New York's Consumer Protection from Deceptive Acts and Practices Act ("NYDAPA")**
**N.Y. Gen. Bus. Law §§ 349, *et seq.***
***(On Behalf of Plaintiff and the New York Class)***

65.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

66.     Plaintiff brings this cause of action individually and on behalf of the members of the proposed New York Class against Defendant for violations of the NYDAPA, N.Y. Gen. Bus. Law § 349, *et seq.*

67.     NYDAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendant's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

68.     Plaintiff and members of the proposed New York Class are "persons" under the NYDAPA, N.Y. Gen. Bus. Law § 349(h), and Defendant's actions as set forth herein occurred in the conduct of "business, trade or commerce" under the NYDAPA.

69.     In the course of its business, Defendant marketed its kratom Products in such a way that gave consumers, including Plaintiff and members of the proposed New York Class, the

impression that its Products were safe to consume and did not cause any opioid-like addiction and withdrawal symptoms; therefore, leading to the false impression that Defendant's Products were worth more than they actually were.

70.    Plaintiff and members of the proposed New York Class had no way of discerning that Defendant's representations were false and misleading.

71.    Defendant thus violated and continues to violate NYDAPA by making statements that, when considered from the perspective of a reasonable consumer, give the false impression that Defendant's kratom Products are safe to consume and do not cause opioid-like effects and withdrawal symptoms.

72.    Defendant knew or should have known that its conduct violated NYDAPA and Defendant owed a duty to Plaintiff and members of the proposed New York Class to refrain from engaging in deceptive acts or practices, and to disclose the truth about kratom's harms.

73.    Defendant made affirmative misrepresentations and omissions when it failed to disclose material facts regarding the harms of its kratom Products with the intent to mislead Plaintiff and members of the proposed New York Class.

74.    Defendant's misleading and false advertising regarding the addictive nature of kratom was material to Plaintiff and members of the proposed New York Class, as they relate to the safety of the Product the consumer received and paid for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the product.

75.    Defendant's unfair and/or deceptive acts or practices were likely to and did deceive reasonable consumers, including Plaintiff and members of the proposed New York Class. Plaintiff and members of the proposed New York Class reasonably relied upon Defendant's

misrepresentations and omissions when purchasing Defendant's kratom Products. Plaintiff and members of the proposed New York Class would not have purchased Defendant's Products but for Defendant's failure to disclose kratom's composition, addictive nature, and the negative side effects and withdrawal symptoms that would result from use of Defendant's Products.

76.     Defendant's violations of NYDAPA, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Plaintiff, members of the proposed New York Class, and the public will be deceived into purchasing Products based on Defendants misrepresentations and omissions regarding the purported "benefits" and actual harms posed by its kratom Products. These misrepresentations lead to financial damage for consumers like Plaintiff and members of the proposed New York Class who would not have bought Defendant's Products had they known kratom's true nature.

77.     As a direct and proximate result of Defendant's misleading and false advertisements, as well as Defendant's deceptive and unfair acts and practices made during the course of Defendant's business, Plaintiff and members of the proposed New York Class suffered ascertainable loss and actual damages.

78.     Plaintiff and members of the proposed New York Class are entitled to all of the damages, remedies, fees, and costs available under NYDAPA, including but not limited to, injunctive relief, recovery of actual damages and/or fifty dollars in statutory damages, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**SECOND CAUSE OF ACTION**
**Violation of New York False Advertising Act ("NYFAA")**
**N.Y. Gen. Bus. Law §§ 350,** *et seq.*
***(On Behalf of Plaintiff and the New York Class)***

79.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

80.    Plaintiff brings this claim individually and on behalf of the proposed New York Class against Defendant for violations of the NYFAA, N.Y. Gen. Bus. Law § 350.

81.    The NYFAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of such representations [made] with respect to the commodity . . ." N.Y. Gen. Bus. Law § 350(a).

82.    Defendant's misrepresentations and omissions in its Products' packaging, marketing, and website descriptions regarding the true nature, composition, and harms of its kratom Products constitute an unfair, untrue, and misleading practice. This deceptive marketing practice gave consumers the false impression that Defendant's Products were natural and/or safe to consume, and therefore lead to the false impression that the Products sold by Defendant were worth more than they actually were.

83.    Defendant misled consumers by making untrue and misleading statements and failing to disclose material facts regarding the true nature and effects of its kratom Products with the intent to mislead Plaintiff and members of the proposed New York Class.

84.    Defendant's unfair and deceptive acts or practices were likely to, and did, deceive reasonable consumers, including Plaintiff and members of the proposed New York Class, about the real harmful nature of its kratom Products. Plaintiff and members of the proposed New York Class reasonably relied upon Defendant's misrepresentations when purchasing Defendant's Products. Plaintiff and members of the proposed New York Class would not have purchased Defendant's Products but for Defendant's misrepresentations and omissions regarding the true nature of kratom and the effects of the ingredients in its kratom Products.

85. Defendant's violations of the NYFAA, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Plaintiff, members of the proposed New York Class, and the public will be deceived into purchasing Products based on Defendant's misrepresentations and omissions regarding the harmful and addictive nature of its Products. These misrepresentations and omissions by Defendant lead to financial damage for consumers like Plaintiff and members of the proposed New York Class.

86. As a direct and proximate result of Defendant's misleading and false advertisements, as well as Defendant's deceptive and unfair acts and practices made by Defendant's business, Plaintiff and members of the proposed New York Class suffered ascertainable loss and actual damages.

87. Plaintiff and members of the proposed New York Class are entitled to all the damages, remedies, fees, and costs available under the NYFAA, including, but not limited to, injunctive relief, recovery of actual damages and/or $500 per violation, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

### THIRD CAUSE OF ACTION
**Breach of Implied Warranty**
***(On Behalf of Plaintiff and the Nationwide Class)***

88. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

89. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

90. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, impliedly warranted that kratom is not addictive and does not cause opioid-like withdrawal symptoms because it did not provide disclosure on the Products' packaging stating otherwise.

91.    Defendant breached its warranty implied in the contract for the sale of its kratom Products because the Products could not pass without objection in the trade under the contract description: the kratom Products were not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiff and the Nationwide Class members, and the Products do not conform to the implied affirmations of fact made on the marketing and packaging for the Products that the Products are not addictive and do not cause withdrawals. U.C.C. §§ 2-313(2)(a), (e), (f). As a result, Plaintiff and the members of the Nationwide Class did not receive the goods as impliedly warranted by Defendant to be merchantable.

92.    Plaintiff and the Nationwide Class members purchased the Products in reliance upon Defendant's skill and judgement and the implied warranties of fitness for the purpose.

93.    The kratom Products were defective when they left Defendant's exclusive control.

94.    Plaintiff and the Nationwide Class did not receive the goods as warranted.

95.    As a direct and proximate cause of Defendant's breach of its implied warranty, Plaintiff and the Nationwide Class have been injured and harmed because (i) they would not have purchased Defendant's Products on the same terms if they knew that the Products were addictive and could cause opioid-like withdrawal symptoms; and (ii) the Products do not have the characteristics, uses, or benefits as promised by Defendant.

96.    On October 18, 2024, Plaintiff's counsel sent Defendant a notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-314 and 2-607. This notice letter advised Defendant that it had breached an implied warranty and demanded Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### *(On Behalf of Plaintiff and the Nationwide Class)*

97.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully stated herein.

98.    Plaintiff brings this claim individually and on behalf of the Nationwide Class members against Defendant.

99.    Plaintiff and the Nationwide Class conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

100.    Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiff and the Nationwide Class members.

101.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Nationwide Class members' purchases of the Products, and retention of such revenues under these circumstances is unjust and inequitable because Defendant failed to disclose on the Products' packaging that the Products were addictive and similar to opioids. This caused injuries to Plaintiff and the Nationwide Class because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

102.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Plaintiff and the Nationwide Class members.

103.    Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

104.    Plaintiff and the Nationwide Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

105.    As a direct and proximate result of Defendant's actions, Plaintiff and the Nationwide Class members have suffered in an amount to be proven at trial.

106.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Products is determined to be an amount less than the premium price of the Products, Plaintiff would be left without the parity in purchasing power to which they are entitled.

107.    Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the full premium price will ensure that Plaintiff is in the same place he would have been in had Defendant's wrongful conduct not occurred, i.e., in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their disposal.

### FIFTH CAUSE OF ACTION
**Fraud by Omission**
***(On Behalf of Plaintiff and the Nationwide Class)***

108.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

109.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

110.    Defendant distributed its Products throughout the United States, including within the State of New York.

111.    Defendant misrepresented that its kratom Products had attributes or qualities that they do not have by failing to disclose that kratom is addictive and can cause opioid-like withdrawal.

112.    Defendant knows that kratom is addictive because it interacts with kratom vendors and has received consumer reports of addiction and withdrawal.

113.    Defendant knows that knowledge of kratom's addictive nature is a material fact that would influence the purchasing decision of reasonable consumers because addiction is an unreasonable health hazard.

114.    Defendant therefore had a duty to Plaintiff and to the Nationwide Class members to disclose that kratom is addictive and can cause withdrawals on the Products' packaging.

115.    Consumers reasonably and justifiably relied on Defendant's omissions, because it is reasonable to assume that a product which is addictive like an opioid would bear a warning on its packaging.

116.    As a result of Defendant's omissions, Plaintiff and the Nationwide Class paid for kratom Products they may not have purchased, or paid more for those Products than they would have, had they known the truth about kratom.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, and on behalf of the Classes, respectfully requests this Court award relief against Defendant as follows:

a.    an order certifying the Classes and designating Plaintiff as the Class Representative and this counsel as Class Counsel;

b.    award Plaintiff and members of the Classes actual, consequential, punitive, and statutory damages, as appropriate;

c.    award restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices described herein;

d.    award declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing its unlawful practices set forth herein, and directing Defendant to identify, with Court supervision, victims of its misconduct and pay them all money it is required to pay;

e.    order Defendant to engage in a corrective advertising campaign;

f.    award attorneys' fees and costs; and

g.    award any other further relief as the Court may deem necessary or appropriate.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 4, 2024                **LYNCH CARPENTER, LLP**

By:    */s/ Gary F. Lynch*
Gary F. Lynch (NY 5553854)
gary@lcllp.com
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone:    (412) 322-9243

Todd D. Carpenter (CA 234464)
todd@lcllp.com
Scott G. Braden (CA 305051)
scott@lcllp.com
James B. Drimmer (CA 196890)
jim@lcllp.com
1234 Camino Del Mar
Del Mar, CA 92014
Telephone:    (619) 762-1910
Facsimile:    (858) 313-1850

*Attorneys for Plaintiff and*
*Proposed Class Counsel*